UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x
ATLAS PARTNERS, LLC, f/k/a CROWN          :
PARTNERS, LLC,                            :
                                          :
                        Plaintiff,        :
                                          :            14 Civ. 7134 (VM) (FM)
            - against -                   :
                                          :
STMICROELECTRONICS                        :
INTERNATIONAL N.V.,                       :
                                          :
                        Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - x

## ATLAS PARTNERS, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

### SULLIVAN & WORCESTER LLP

1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Plaintiff Atlas Partners, LLC, f/k/a Crown Partners LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND............................................................................... 2

ARGUMENT ................................................................................................. 6

I.   THE AMENDED COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR
     BREACH OF CONTRACT ........................................................................ 7

     A.   DEFENDANT BREACHED ITS OBLIGATIONS UNDER THE PLAIN
          LANGUAGE OF THE AGREEMENT ...................................................... 8

     B.   AT MOST, THERE IS AN AMBIGUITY IN THE AGREEMENT THAT IS
          NOT APPROPRIATE FOR RESOLUTION ON A MOTION TO DISMISS............. 13

II.  THE AMENDED COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR
     UNJUST ENRICHMENT ........................................................................ 14

CONCLUSION.............................................................................................. 16

i

## <u>TABLE OF AUTHORITIES</u>

Cases                                                    Page

*350 E. 30th Parking v. Bd. of Managers of 350 Condo.*,
    280 A.D.2d 284 (1st Dep't 2001) .................................................................................... 8

*Acme Supply Co. v. City of N.Y.*,
    39 A.D.3d 331 (1st Dep't 2007) ..................................................................................... 11

*Anwar v. Fairfield Greenwich Ltd.*,
    831 F. Supp. 2d 787 (S.D.N.Y. 2011) ........................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 7

*Bank of New York Trust, N.A. v. Franklin Advisors, Inc.*,
    522 F. Supp. 2d 632 (S.D.N.Y. 2007) ...................................................................... 7, 14

*Bell Atlantic Corp. v. Twombly*,
    550 US 544 (2007) ............................................................................................................ 6

*Blackstone Advisory Partners v. Gupta*,
    121 A.D.3d 411 (1st Dep't 2014) .................................................................................... 9

*Bourne v. Walt Disney Co.*,
    68 F.3d 621 (2d Cir. 1995) .............................................................................................. 7

*Breed v. Ins. Co. of N. Am.*,
    46 N.Y.2d 351 (1978) ....................................................................................................... 8

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ............................................................................................ 6

*Chase Manhattan Bank v. New Hampshire Ins. Co.*,
    25 A.D.3d 489 (1st Dep't 2006) .................................................................................... 14

*Computer Possibilities Unlimited v. Mobil Oil Corp.*,
    301 A.D.2d 70 (1st Dep't 2002) .................................................................................... 13

*Consarc Corp. v. Marine Midland Bank*,
    996 F.2d 568 (2d Cir. 1993) .......................................................................................... 14

*Cortec Indus. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ............................................................................................ 11

*DLJ Mortg. Capital Inc. v. Home Loan Corp.*,
    667 F. Supp. 2d 368 (S.D.N.Y. 2009) ........................................................................... 12

*Eastman Kodak Co. v. Altek Corp.*,
    936 F. Supp. 2d 342 (S.D.N.Y. 2013) ........................................................................... 10

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*,
   375 F.3d 168 (2d Cir. 2004)...................................................................................... 6

*Faulkner v. Beer*,
   463 F.3d 130 (2d Cir. 2006)...................................................................................... 6

*Georgia Malone & Co. v. Rieder*,
   86 A.D.3d 406 (1st Dep't 2011) .............................................................................. 15

*Gilman v. Marsh & McLennan Cos.*,
   868 F. Supp. 2d 118 (S.D.N.Y. 2012)..................................................................... 14

*Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*,
   273 F.3d 509 (2d Cir. 2001).................................................................................... 15

*Goldstein v. CIBC World Markets Corp.*,
   6 A.D.3d 295 (1st Dep't 2004) ................................................................................ 15

*Greenwich Capital Fin. Prods. v. Negrin*,
   74 A.D.3d 413 (1st Dep't 2010) .............................................................................. 11

*Harris v. Seward Park Housing Corp.*,
   79 A.D.3d 425 (1st Dep't 2010) ................................................................................ 7

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
   889 F.2d 1274 (2d Cir. 1989).................................................................................... 8

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (2009) ............................................................................................. 15

*James v. Jamie Towers Hous. Co.*,
   294 A.D.2d 268 (1st Dep't 2002), ........................................................................... 11

*Jasper & Black, LLC v. Carolina Pad Co.*,
   No. 10 CIV. 3562 (LTS) (HBP), 2012 WL 413869 (S.D.N.Y. Feb. 9, 2012)........................ 12

*K. Bell & Assocs. v. Lloyd's Underwriters*,
   97 F.3d 632 (2d Cir. 1996)........................................................................................ 7

*Kamfar v. New World Rest. Grp.*,
   347 F. Supp. 2d 38 (S.D.N.Y. 2004)....................................................................... 11

*Kiobel v. Royal Dutch Petroleum Co.*,
   621 F.3d 111 (2d Cir. 2010)...................................................................................... 6

*Krumme v. WestPoint Stevens Inc.*,
   238 F.3d 133 (2d Cir. 2000)...................................................................................... 8

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   No. 14-CV-2197 (VM), 2014 WL 4447298 (S.D.N.Y. Aug. 27, 2014)....................... 15

*Mfrs. & Traders Trust Co. v. Erie Cnty. Indus. Dev. Agency*,
   269 A.D.2d 871 (4th Dep't 2000) ............................................................................ 11

*R.H. Damon & Co. v. Softkey Software Prods., Inc.*,
  811 F. Supp. 986 (S.D.N.Y. 1993) ............................................................. 13

*R/S Assocs. v. New York Job Dev. Auth.*,
  98 N.Y.2d 29 (2002) ..................................................................................... 11

*Revson v. Cinque & Cinque, P.C.*,
  221 F.3d 59 (2d Cir. 2000) ............................................................................. 8

*Schnall v. Marine Midland Bank*,
  225 F.3d 263 (2d Cir. 2000) ......................................................................... 11

*Schultz v. Gershman*,
  68 A.D.3d 426 (1st Dep't 2009) ................................................................... 15

*Seiden Assocs. v. ANC Holdings, Inc.*,
  959 F.2d 425 (2d Cir. 1992) ........................................................................... 7

*Selevan v. N.Y. Thruway Auth.*,
  584 F.3d 82 (2d Cir. 2009) ............................................................................. 6

*Sharper Props. Enters. v. Hubbard Sand & Gravel, Inc.*,
  12 A.D.3d 494 (2d Dep't 2005) ................................................................... 11

*Siemens Westinghouse Power Corp. v. Dick Corp.*,
  293 F. Supp. 2d 336 (S.D.N.Y. 2003) ......................................................... 10

*Steinberg v. Schnapp*,
  73 A.D.3d 171 (1st Dep't 2010) ................................................................... 11

*T.M. Real Estate Holding, LLC v. Stop & Shop Supermarket Co.*
  12 No. Civ. 1808 (CM), 2013 WL 603325 (S.D.N.Y. Feb. 14, 2013) ......... 7

*Verzani v. Costco Wholesale Corp.*,
  641 F. Supp. 2d 291 (S.D.N.Y. 2009), ........................................................ 11

*Z/Z Sullivan Realty Co. v. Ronan*,
  189 A.D.2d 1084 (3d Dep't 1993) ................................................................. 9

Rules

Fed. R. Civ. P. 8(d)(2) .................................................................................... 14

Fed. R. Civ. P. 12(b)(6) ................................................................................... 6

Other Authorities

22A N.Y. Jur. 2d Contracts § 484 ................................................................... 8

2 Restatement (Second) of the Law of Contracts § 253(2) (1981) ............... 13

## PRELIMINARY STATEMENT

Plaintiff Atlas Partners, LLC, formerly known as Crown Partners, LLC ("Crown"), developed, hosted and serviced a web content management system for defendant STMicroelectronics International N.V. during an agreed upon term of three years -- July 1, 2011 through June 30, 2014. For these services, Defendant agreed to pay $4,380,000 to Crown in installments over ten calendar quarters. Crown provided services through the end of the three-year term. Defendant does not dispute that Crown provided services over that period. Defendant nevertheless has refused to pay the last installment, depriving Crown of the full benefit of its bargain. Defendant's purported justification for failing to pay the money that it owes to Crown relies on an incorrect interpretation of the several contract documents comprising the parties' agreement (the "Agreement").

Early in the contract term, the parties entered into an amendment to the Agreement altering certain aspects of Crown's services and Defendant's payment schedule (the "Amendment"). Defendant maintains that the Amendment extended the term of the Agreement to impose a new quarter of services and that the final installment covers only services to be rendered in the final quarter. Defendant argues that it owes nothing to Crown and that the Amended Complaint should be dismissed because Crown reserved its right to terminate service after June 30, 2014. Defendant is incorrect. At no point did the parties expressly -- or implicitly -- extend the term of the Agreement to impose new quarter of services.

Defendant's argument suffers from one glaring defect: nowhere does the Amendment state that it extended the term of the services. Defendant seeks to add words that do not appear in the Amendment to support an interpretation that contradicts the plain language of the Agreement. To bolster its position, Defendant improperly relies on materials outside of the

Amended Complaint and the Agreement in an attempt to explain the parties' purported intentions for entering into the Amendment.

The Amended Complaint adequately alleges a claim for breach of contract, and a claim, in the alternative, for unjust enrichment. It sets forth Crown's service obligations, Crown's compliance with those obligations, Defendant's payment obligation and Defendant's failure to pay. Defendant has not identified any defects in the Amended Complaint. It has, at most, alleged an ambiguity in the Agreement. This motion to dismiss is not the appropriate vehicle, however, to resolve any ambiguity in the Agreement. Any ambiguity must be interpreted in Crown's favor at this stage. The motion, therefore, must be denied.

## FACTUAL BACKGROUND

Beginning in 2008, Crown began providing Defendant with information technology services. The foundation of the parties' business arrangement is the Master Services Agreement, dated December 17, 2008 (the "MSA"). (Am. Compl. ¶¶ 6-7; Ex. A).[1] The MSA is not a contract for services itself; rather, it provides a framework for entering into sub-agreements for specific services. To that end, the MSA provides that specific services and Defendant's obligation to pay for those services are to be set forth in separate statements of work. (Am. Compl. ¶ 10). If a given statement of work fails to set forth certain terms, like the payment terms, the MSA establishes default terms that would apply. (*See* MSA § 3).

The parties executed a statement of work (the "SOW"), effective July 29, 2011, for certain web content management and related services. (Am. Compl. ¶ 11; Ex. B). More specifically, Crown agreed to develop and host a costly and sophisticated private website, a web content management system ("WCMS") platform, where Defendant could create new, or edit

---

[1]   The Amended Complaint is attached as Exhibit 1 to the Declaration of Clark A. Freeman, dated December 8, 2014. Lettered exhibit references are to the exhibits accompanying Defendant's declaration submitted with the motion to dismiss.

existing, web content.  Crown did not host Defendant's publicly accessible company website. Any implication in Defendant's motion to the contrary is wrong.

The SOW contains an "Initial Term" provision that is set forth separately from the provisions governing services and payment. (SOW at 29).  It provides that the SOW "shall come into force retroactively as of July 1st 2011 and shall remain into force during a 36-month ("Initial Term") and may only be terminated pursuant to the Cancellation Policy . . . ." (*Id.*; Am. Compl. ¶ 12).  The SOW thus was to remain effective through June 30, 2014, with a possible one-year extension. (Am. Compl. ¶¶ 12-13; SOW at 29, 31).

The SOW details a schedule for the provision of services within the Initial Term.  It contemplates an "initial implementation phase" during which Crown would develop the website, followed by a period during which Crown would host the WCMS platform. (SOW at 3-4).  In return for these services, Defendant agreed to pay $4,380,000 to Crown in installments over a period of ten quarters. (Am. Compl. ¶ 15).

Each quarterly payment represented compensation for multiple services that Crown provided.  One component of the quarterly payments was a fee for the maintenance and hosting of the website during the Initial Term. (SOW at 27-28).  Another important component was a partial payment for the costly website development services that Crown provided at the beginning of the Initial Term, including "Platform set up," "Recreation and Optimization of existing WCMS," "Initial user training," "Data Migration" and "Upgrade of the Documentum platform and all system components . . . to the latest release of Documentum 6.5." (*Id.* at 27). Under the SOW, Crown was to "receive installments for the project fees at the . . . [quarterly] schedule milestones." (*Id.* at 29).  Put another way, the quarterly payments were not mere

hosting fees for the following quarter, as Defendant contends; rather, they were partial payments for the totality of Crown's services.

The SOW set forth a payment schedule in Table 1 on page 4 and Table 13 on page 29 whereby Defendant would pay $876,000 to Crown on the first day of the first calendar quarter of 2012, followed by eight quarterly payments of $438,000 starting July 1, 2012, the first day of the third calendar quarter. (Am. Compl. ¶ 15; SOW at 4, 29). The language introducing the Tables provided that payment was to be made "up front" and "for the upcoming period." (SOW at 4, 29).

The parties, however, recognized that the schedule was not fixed and that it might change. The go-live date was dependent upon Defendant's acceptance of the website, and the SOW did not set forth the acceptance criteria. (SOW at 3-4). Instead, the SOW provided that the "[a]cceptance criteria for all application setup deliverables will be defined and documented in the Project baseline document during the Joint Project Planning Meeting." (Id. at 31). A "delay in the acceptance process" -- by either party -- could result in a "Change Order to address the impact on schedule, resources and/or costs . . . ." (Id.). The SOW nowhere mentions possible alteration of the Initial Term.

Early in the Initial Term, the parties entered into the Amendment to the SOW. The Amendment, effective as of December 5, 2011, made three changes to the SOW. (Ex. C). First, it set forth the acceptance criteria for the website. (Amendment § 3 & Appendix 1). Second, it modified the timeline for the website to "go live." (Id.). Third, it modified the payment schedule for Defendant's installment payments to Crown by replacing Tables 1 and 13 in the SOW with new tables. (Id. § 2).

Under the new schedule, Defendant agreed to pay $219,000 and $657,000 to Crown upon the happening of certain events related to going live, followed by eight quarterly payments of $438,000, labeled "[r]ecurring service fee[s]," beginning in the fourth quarter of 2012. (Am. Compl. ¶ 15; Amendment § 2). The Amendment effectively shifted the due date for Defendant's installment payments back by one quarter, but did not change the total amount of the project fees that were payable by Defendant to Crown. The last installment thus was to come due on July 1, 2014, not April 1, 2014. (Am. Compl. ¶¶ 15, 18; Amendment § 2). "All other terms and conditions of the SOW . . . [remained] unmodified and in full force and effect." (Amendment § 4). The Amendment did not purport to alter the Initial Term.

The Amendment does not explain the reason for the changes. In an attempt to bolster its interpretation of the Amendment's effects, Defendant claims that the parties entered into the Amendment because of certain delays in the implementation phase. That claim finds no basis in either the Amended Complaint or the Amendment and must be disregarded. On the other hand, the Amendment does make clear that the changes were supported by consideration of "the mutual promises contained [t]herein and other good and valuable consideration, the receipt and sufficiency of which . . . [the parties] [t]hereby acknowledged." (*Id.* at 1).

Defendant made the payments of $219,000 and $657,000. (Am. Compl. ¶ 19). Defendant made seven of the eight quarterly payments. (*Id.* ¶ 20).

By letter dated February 24, 2014, Defendant informed Crown that it would terminate the SOW upon its expiration. (*Id.* ¶ 21). Defendant was entitled to terminate the SOW. However, Defendant went further, claiming entitlement to one quarter of hosting service beyond the Initial Term. (*Id.*).

Crown subsequently timely invoiced Defendant for the last quarterly payment, due July 1, 2014, and made a written demand for payment. (*Id.* ¶¶ 22, 25-26). Defendant has yet to make the payment to Crown. (*Id.* ¶ 27).

## ARGUMENT

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true" and draw all reasonable inferences in the plaintiff's favor. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)); *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009). "Generally, consideration of a motion to dismiss . . . is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).[2]

To withstand such a motion, a complaint need only contain sufficient factual allegations to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 US 544, 555 (2007). It must state a claim that is plausible on its face, meaning the factual allegations, accepted as true, permit "the court to draw the reasonable inference that the

---

[2] Crown objects to Defendant's submission of the invoices and two letters with its motion to dismiss. (Exs. D-F). In some cases it is appropriate for a court, on a motion to dismiss, to consider documents that, although not attached to the complaint, are "integral" to it. *Faulkner*, 463 F.3d at 134. Neither the letters nor the invoices are integral to the Amended Complaint. In any event, they are extrinsic to the parties' agreement and cannot be considered when interpreting the Agreement in connection with this motion. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177-78 (2d Cir. 2004) (noting that a contract must be interpreted without resort to extrinsic evidence unless it is ambiguous, and "a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings"); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (explaining that on a motion to dismiss a court that considers some extra-pleading materials and not others "risks depriving the parties of a fair adjudication of the claims by examining an incomplete record").

Crown further objects to Defendant's reliance on facts outside the Amended Complaint and the Agreement. Defendant makes inappropriate factual assertions with respect to, among other things, the reasons for the Amendment, Defendant's non-renewal of the Agreement and Crown's response to the non-renewal. (*See, e.g.*, Defendant's Memorandum of Law, dated Nov. 20, 2014 ("Defendant's Memo"), at 1-4). These factual assertions must be disregarded. *See Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (reversing dismissal because district court erroneously relied on fact asserted only in defendant's moving papers).

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Crown has done that here.

Stripped of its rhetoric, Defendant's motion is simply a plea to adopt its interpretation of the contract.  This it may not do.  *See T.M. Real Estate Holding, LLC v. Stop & Shop Supermarket Co.*, 12 No. Civ. 1808 (CM), 2013 WL 603325, at *7 (S.D.N.Y. Feb. 14, 2013) (explaining that on a motion to dismiss, a court must resolve all competing reasonable interpretations of a contract in plaintiff's favor); *Bank of New York Trust, N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 635 (S.D.N.Y. 2007) (Marrero, J.) ("The Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities.").  As explained below, Crown adequately has pled a claim for breach of contract, and Defendant's motion must be denied.[3]

## I.  THE AMENDED COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR BREACH OF CONTRACT

To state a claim for breach of contract under New York law, a plaintiff must allege "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Harris v. Seward Park Housing Corp.*, 79 A.D.3d 425, 426 (1st Dep't 2010).  "[T]he initial interpretation of a contract is a matter of law for the court to decide." *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (internal quotation marks and citation omitted).  Defendant does not dispute (i) the existence of a contract; (ii) that Crown performed up to June 30, 2014; and (iii) that Defendant did not pay Crown's last invoice.  Thus, the Amended Complaint is sufficient.

This Court's primary objective "is to give effect to the intent of the [contracting] parties as revealed by the language they chose to use." *Bourne v. Walt Disney Co.*, 68 F.3d 621, 628-29 (2d Cir. 1995) (quoting *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992))

---

[3]  Defendant violated Local Rule 7.1(a)(3) by failing to submit a copy of the Amended Complaint with its motion.  This omission alone is a further ground to deny the motion.

(internal quotation marks omitted, alteration in original).   Where parties amend a contract, the "modifying agreement should be construed in connection with the original contract in order to ascertain the entire intent of the parties." 22A N.Y. Jur. 2d Contracts § 484; *see 350 E. 30th Parking v. Bd. of Managers of 350 Condo.*, 280 A.D.2d 284, 287 (1st Dep't 2001) ("Where a lease is subsequently modified, the lease and its modifications must be taken together and construed as one contract in order to carry out the parties' intent.").

"[T]he threshold question [in interpreting a contract] . . . is whether the contract terms are ambiguous." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000)) (internal quotation marks omitted).   Contract terms are not ambiguous if the language used has a "definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)) (internal quotation marks and citation omitted, alteration in original).

## A.  DEFENDANT BREACHED ITS OBLIGATIONS UNDER THE PLAIN LANGUAGE OF THE AGREEMENT

Defendant does not dispute that Crown adequately has alleged the existence of a contract and that Defendant has not paid the full amount due to Crown under that contract.   It disputes only the allegations that Crown performed fully under the Agreement and that Defendant was obligated to pay. (*See* Defendant's Memo at 12, 17 n.10).   Defendant's protestations are without merit.

The SOW expressly provided that it went into effect on July 1, 2011 and remained in effect for the following 36 months. (*See* SOW at 29).   The Initial Term provision is set apart

from and independent of the payment schedule in the SOW. (*See* SOW at 29). The fundamental flaw in Defendant's argument that the Amendment extended the Initial Term is that the Amendment nowhere states that it extended the Initial Term. *See Blackstone Advisory Partners v. Gupta*, 121 A.D.3d 411, 411 (1st Dep't 2014) ("Defendant's proposed interpretation improperly seeks to add words to the [contract] amendment.").

The Amendment is clear about what it did and did not modify in the SOW. It provided new dates for the completion of the website in Section 3 and the Appendix and set a new payment schedule in Section 2. "All other terms and conditions of the SOW . . . [remained] unmodified and in full force and effect." (Amendment § 4). Accordingly, the Initial Term remained the same. *See Z/Z Sullivan Realty Co. v. Ronan*, 189 A.D.2d 1084, 1085 (3d Dep't 1993) ("It is apparent from a reading of the contract modification . . . that it did not eliminate the [contingency clause] . . . in the principal contract. . . . Significantly, the modification, which specifically identified every change that it effected in the principal contract, did not mention the paragraph containing the contingency clause."). The only way to extend the term of performance was to renew the SOW.

Unable to identify any specific language modifying the Initial Term, Defendant tries to imply a modification by pointing to the language in the SOW requiring Crown to invoice Defendant "up front" and to the Amendment's description of the payments as "[r]ecurring service fee[s]." (*See* Defendant's Memo at 14-17.) The language on which Defendant relies, however, does not support its interpretation of the Amendment.

As a preliminary matter, the provisions containing that language address only the nature and timing of Defendant's installment payments. They do not specifically address the term of the SOW. Because the SOW contains a specific provision setting the Initial Term, which was

not addressed in the Amendment, the specific provision controls. *See Siemens Westinghouse Power Corp. v. Dick Corp.*, 293 F. Supp. 2d 336, 342 (S.D.N.Y. 2003) (Marrero, J.) ("The Court agrees with . . . [plaintiff] that this more specific provision is directly on point and controls the issue.").

The SOW does state that Crown was to invoice Defendant "quarterly, up-front" and for the "upcoming period." (SOW at 4, 29). That language, however, simply introduced and described the payment schedule in Tables 1 and 13. The Amendment expressly replaced the payment schedule in those Tables and defined the payments differently than the SOW. (*See* Amendment § 2). In so doing, the Amendment superseded the introductory language.

Nor does the Amendment's description of the payments as "[r]ecurring service fee[s]" mean that the last installment was for a quarter of hosting service beyond the Initial Term. To read the term "[r]ecurring service fee" to mean that each payment covered only hosting services for the upcoming quarter, is to disregard the context of the Amendment. "Service" refers to all of the work that Crown provided to Defendant under the SOW, not just hosting fees for a given quarter. Indeed, the SOW clarifies that the "fee" is for all of Crown's "services," which include compensation for Crown's initial development of the WCMS platform. (*See* SOW at 27). Defendant, therefore, is wrong when it claims that Crown's interpretation of the Amendment gives the term "[r]ecurring service fee" different meanings in the SOW and the Amendment. (*See* Defendant's Memo at 14). It gives the "the same words used in different parts of . . . [the Agreement] the same meaning." *See Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 351 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

It defies common sense to argue -- as Defendant attempts -- that merely by shifting the final installment payment to the end of the Initial Term, the parties must have intended that

10

payment to be for a new, "upcoming," but implied, quarter of service. Common sense dictates that the parties would not have altered the Initial Term, which was a fundamental provision of the Agreement, without explicitly setting out that change in the Amendment. Defendant's interpretation, not Crown's, creates a "commercially [un]reasonable" result because it adds a quarter of service beyond the Initial Term without additional compensation. *See Greenwich Capital Fin. Prods. v. Negrin*, 74 A.D.3d 413, 415 (1st Dep't 2010) (explaining a court should not "ignore[] common sense" in interpreting a contract).

None of the cases Defendant has cited provides support for reading additional language into the Amendment to extend the Initial Term. Most of the cases stand for basic, uncontroversial principles of contract interpretation, but they are factually inapposite and provide little guidance in this case.[4]

Defendant makes much of the fact that the Amended Complaint refers to the last payment as the "Final Payment" and that the Amendment does not identify the last payment as a "Final Payment." (*See* Defendant's Memo at 12). The Amended Complaint's use of the term "Final Payment" is intended only to identify the last payment under the Agreement. The label has no legal significance.

---

[4] *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (involving claims under the Truth in Lending Act); *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) (involving claims under the Securities Act of 1933); *Anwar v. Fairfield Greenwich Ltd.*, 831 F. Supp. 2d 787, 794 (S.D.N.Y. 2011) (Marrero, J.), *aff'd sub nom., Pujals v. Standard Chartered Bank*, 533 F. App'x 7 (2d Cir. 2013) (interpreting contract under Florida law by reference use of term in industry); *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 50 (2d Cir. 2010) (disposing of frivolous lawsuit about adequacy of label on packaged shrimp platter); *Kamfar v. New World Rest. Grp.*, 347 F. Supp. 2d 38, 41-42 (S.D.N.Y. 2004) (interpreting severance agreement on a motion for summary judgment); *R/S Assocs. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 32-33 (2002) (affirming dismissal of putative class action complaint); *Steinberg v. Schnapp*, 73 A.D.3d 171, 173 (1st Dep't 2010) (not a breach of contract case); *Acme Supply Co. v. City of N.Y.*, 39 A.D.3d 331, 332 (1st Dep't 2007) (interpreting dispute resolution clause in requirements contract); *Sharper Props. Enters. v. Hubbard Sand & Gravel, Inc.*, 12 A.D.3d 494, 495 (2d Dep't 2005) (affirming denial of summary judgment without providing factual background); *James v. Jamie Towers Hous. Co.*, 294 A.D.2d 268, 269 (1st Dep't 2002), *aff'd*, 99 N.Y.2d 639 (2003) (interpreting meaning of single term that appeared in multiple places in contract); *Mfrs. & Traders Trust Co. v. Erie Cnty. Indus. Dev. Agency*, 269 A.D.2d 871, 871-72 (4th Dep't 2000) (determining priority of mortgages under financing documents on motion for summary judgment).

11

Defendant mistakenly relies on the MSA terms that provide for payment in advance of services to justify its refusal to pay. (*See* Defendant's Memo at 16). The payment terms in the MSA apply only if the relevant SOW does not set forth payment terms. (*See* MSA § 3). The SOW at issue, and its Amendment, included payment terms. Thus, the MSA does not apply.

Defendant also argues that Crown was not entitled to payment because it did not invoice Defendant properly for the July 1, 2014 payment. (*See* Defendant's Memo at 16). This is false. Crown invoiced Defendant for the July 1, 2014 payment more than thirty days before the due date. (*See* SOW at 29).

Finally, Defendant argues that Crown cannot sue under the Agreement because it did not allege "due performance" and because Crown repudiated the Agreement. (*See* Defendant's Memo at 17 n.10). Defendant offers up its interpretation of the Agreement, which would have required Crown to perform through the third quarter of 2014. Having set up this straw man, Defendant argues that Crown has not even alleged that it duly performed through the third quarter 2014. This argument is circular. Indeed, it is not even an additional argument. It merely is the flipside of Defendant's breach argument, a misguided plea for the Court to adopt its interpretation of the Agreement on its motion to dismiss.

Defendant does not dispute that Crown provided services through June 30, 2014 and that Crown properly has alleged that it was entitled to payment of the last invoice. Nothing more is required. None of Defendant's cited cases is to the contrary. *See Jasper & Black, LLC v. Carolina Pad Co.*, No. 10 CIV. 3562 (LTS) (HBP), 2012 WL 413869, at *9 (S.D.N.Y. Feb. 9, 2012) (dismissing breach of contract claim where plaintiff failed to allege compliance with thirteen obligations clearly required under the contract); *DLJ Mortg. Capital Inc. v. Home Loan Corp.*, 667 F. Supp. 2d 368, 368 (S.D.N.Y. 2009) (Marrero, J.) (explaining simply that plaintiff

must allege due performance); *R.H. Damon & Co. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 991 (S.D.N.Y. 1993) (holding plaintiff did not state a claim for recovery of compensation where it failed to allege that it performed any services).

Moreover, Crown did not at any point repudiate the Agreement and then subsequently seek to recover under the Agreement as though it remained in effect. (*See* Defendant's Memo at 13 n.9). It tried, and continues to try, to enforce the terms of the Agreement to receive compensation for the services that it rendered. *See Computer Possibilities Unlimited v. Mobil Oil Corp.*, 301 A.D.2d 70, 77-80 (1st Dep't 2002) (involving plaintiff that knowingly repudiated contract and then sued defendant for breach of contract when defendant terminated the contract five months later); 2 Restatement (Second) of the Law of Contracts § 253(2) (1981) (explaining that repudiation of duty discharges other party's duty).

For these reasons, the Amended Complaint adequately alleges that Defendant breached the plain language of the Agreement by failing to tender the final $438,000 payment to Crown. Defendant's failure to pay deprived Crown of the full benefit of its bargain. Defendant, on the other hand, received all of the web development services and the three years of service for which it bargained. Crown's breach of contract claim should not be dismissed.

## B.  AT MOST, THERE IS AN AMBIGUITY IN THE AGREEMENT THAT IS NOT APPROPRIATE FOR RESOLUTION ON A MOTION TO DISMISS

By offering another interpretation of the Agreement, Defendant has, at most, raised an ambiguity which, if accepted, would require the consideration of extrinsic evidence. It is well established, however, that a "Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities. Where reasonable minds could be said to differ because the language the parties used in their written contract is susceptible to more than one meaning -- each as reasonable as the other -- and where extrinsic evidence of the parties' actual intent exists, it

should be submitted to the trier of fact." *Bank of New York Trust*, 522 F. Supp. 2d at 637 (quoting *Consarc Corp. v. Marine Midland Bank*, 996 F.2d 568, 573 (2d Cir. 1993)) (internal quotation marks omitted).

Defendant's argument depends on a leap of logic that is not supported by the language of the Amendment.  Sections 2 and 3 of the Amendment unambiguously altered the SOW by moving the "go live" date from January 2012 to May 1, 2012 and shifting the payment schedule back by one quarter.  Defendant infers that the Amendment made another change, an implicit extension of the Initial Term to include the third quarter of 2014.  No language in the Amendment supports that inference.  At best, Defendant's suggestion is one of two reasonable interpretations of the Agreement.

If the Agreement is ambiguous, the dismissal motion is not the appropriate vehicle to resolve which interpretation should prevail.  That determination can be made only with the assistance of extrinsic evidence not currently before the Court.  *See Chase Manhattan Bank v. New Hampshire Ins. Co.*, 25 A.D.3d 489, 490 (1st Dep't 2006) (reversing dismissal because court could not resolve question as to term of insurance coverage "without extrinsic evidence as to the parties' intention in modifying the . . . Agreement").

## II. THE AMENDED COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR UNJUST ENRICHMENT

Crown pleads unjust enrichment in the alternative and in the event that the Agreement between the parties is found to be invalid.  The Federal Rules of Civil Procedure expressly provide that a complaint may plead claims in the alternative.  *See* Fed. R. Civ. P. 8(d)(2).  This includes pleading a breach of contract claim under an allegedly valid contract and, in the alternative, a claim for unjust enrichment.  *See Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 136-37 (S.D.N.Y. 2012) (rejecting defendant's argument that unjust enrichment claim

should be dismissed due to existence of valid contract because plaintiffs pled their quasi-contract claims as alternatives to their contract claim).

None of the cases that Defendant has cited holds that a claim for unjust enrichment cannot be pled in the alternative. *See MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, No. 14-CV-2197 (VM), 2014 WL 4447298, at *6 (S.D.N.Y. Aug. 27, 2014) (Marrero, J.) (dismissing unjust enrichment claim because court determined that relevant contracts were "valid and enforceable"); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) (explaining purpose of quasi contract theory of recovery); *Georgia Malone & Co. v. Rieder*, 86 A.D.3d 406, 408 (1st Dep't 2011) (same); *Schultz v. Gershman*, 68 A.D.3d 426, 427 (1st Dep't 2009) (stating only that unjust enrichment claim was barred by existence of contract); *Goldstein v. CIBC World Markets Corp.*, 6 A.D.3d 295, 296 (1st Dep't 2004) (same).

Here, the Amended Complaint adequately alleges a claim for unjust enrichment in the alternative. It alleges that Defendant was enriched through the development and hosting services that Crown provided (Am. Compl. ¶ 36); that said enrichment was at Crown's expense because Defendant did not compensate Crown for the full value of those services (Am. Compl. ¶ 37); and that equity and good conscience require Defendant to make restitution (Am. Compl. ¶ 38). *See Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001) (setting forth elements of unjust enrichment claim).

## CONCLUSION

For the foregoing reasons, Atlas Partners, LLC, formerly known as Crown Partners, LLC, respectfully requests that the Court deny, in its entirety, Defendant's motion to dismiss the Amended Complaint.

Dated: New York, New York
       December 8, 2014

**SULLIVAN & WORCESTER LLP**

By: _____
       Harry H. Rimm
       Clark Freeman

1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

Attorneys for plaintiff *Atlas Partners, LLC, f/k/a*
   *Crown Partners LLC*