UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
                                            :

ATLAS PARTNERS, LLC, f/k/a CROWN     :
PARTNERS, LLC,                               :

             Plaintiff,            :

                                 :    14 Civ. 7134 (VM) (FM)

               v.               :

STMICROELECTRONICS INTERNATIONAL  :
N.V.,                                    :

             Defendant.        :

--------------------------------------------------------- x

**DEFENDANT STMICROELECTRONICS INTERNATIONAL N.V.'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

SIDLEY AUSTIN LLP
John J. Kuster
Benjamin F. Burry
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Attorneys for Defendant
STMicroelectronics International N.V.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................3

    I.      PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE
           DISMISSED ...............................................................................................3

          A.     The Agreement provides for recurring payments by ST conditioned
                  on Crown's delivery of services, and, contrary to Crown's
                  argument, nowhere does ST agree "to pay $4,380,000 to Crown" ..............3

          B.     The SOW's "Initial Term" provision is no obstacle to ST's
                  interpretation of the Agreement ..................................................................4

          C.     The interpretations of the Agreement compelled by adopting
                  Plaintiff's theory of the case are absurd, commercially
                  unreasonable, and inconsistent with the parties' plain intent .....................7

    II.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST BE
           DISMISSED ...............................................................................................9

CONCLUSION ........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*350 E. 30th Parking, Ltd. v. Bd. of Managers of 350 Condo.,*
    280 A.D.2d 284 (1st Dep't 2001) ........................................................................7

*Acme Supply Co. v. City of New York,*
    39 A.D.3d 331 (1st Dep't 2007) ........................................................................8

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)...............................................................................4

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991)..................................................................................4

*Greenwich Capital Fin. Prods., Inc. v. Negrin,*
    74 A.D.3d 413 (1st Dep't 2010) ........................................................................8

*Instinet Inc. v. Ariel (UK) Ltd.,*
    No. 08-CV-7141 (JFK), 2010 WL 779324 (S.D.N.Y. Mar. 5, 2010).......................6

*James v. Jamie Towers Hous. Co.,*
    294 A.D.2d 268 (1st Dep't 2002), *aff'd,* 99 N.Y.2d 639 (2003) ............................5

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP,*
    No. 14-CV-2197 VM, 2014 WL 4447298 (S.D.N.Y. Aug. 27, 2014) ....................9

*Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.,*
    88 N.Y.2d 347 (1996)........................................................................................8

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 2

Local Rule 7.1(a)(3)................................................................................................9

ST respectfully submits this reply memorandum of law in further support of its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiff's Opposition brief ("Opposition" or "Opp.") confirms that this is a straightforward breach of contract case that can be resolved by this Court as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6).  It is axiomatic that under New York law, when a contract is susceptible to one reasonable interpretation, the contract is not ambiguous, and the Court then should apply that reasonable interpretation to the plaintiff's allegations of a breach of that agreement.  Here, ST's interpretation relies on the plain meaning of the actual words of the Agreement, while Crown either wholesale ignores contractual language – even going so far as employing ellipses to avoid key words – or seeks to impose an irrational reading of terms in isolation rather than in harmony with the entirety of the Agreement.  A plaintiff cannot rely upon an unreasonable reading of a contract to create ambiguity where none exists.  As explained below, based on the only reasonable interpretation of the parties' Agreement, Crown has failed to state a claim that ST breached the Agreement, and that claim must be dismissed as a matter of law.

ST in its opening brief ("ST Br.") explained that Crown is not entitled to the $438,000 payment – an "up-front" "[r]ecurring service fee" – that it seeks because Crown concedes it never rendered the services through "Q3 2014" that it was obligated to provide to ST to earn that fee, as clearly mandated by the parties' MSA and SOW, as amended by the Amendment (all three, collectively, the "Agreement").  ST Br. at 15-17.  The Agreement simply did not provide

---

[1] Capitalized terms not defined herein shall have the meaning set forth in ST's opening brief.  Exhibit references are to exhibits to the Burry Declaration filed on November 20, 2014.

for a mythical "Final Payment" in that amount.  Indeed, Crown itself now fully concedes the concept of a "Final Payment" detached from providing services appears no where in the parties' Agreement.  Opp. at 11.  Crown's argument that it was entitled to a gratuitous "Final Payment" from ST for Q3 2014 because the Initial Term in the original SOW had purportedly not been amended, (Opp. at 1, 5, 9-11), is simply wrong.  Not only was the table setting forth the remaining payments under in the original SOW amended, but Section 4 of the Amendment specifically states that the terms and conditions of the Amendment "are deemed to amend and replace *relevant terms* in the Agreement" – which necessarily included changing the Initial Term to comport with the time frame in the table in the Amendment, just as the original tables in the SOW aligned with the Initial Term.  Any other result is absurd; the Q3 2014 payment in the table specifically calls for a "recurring service fee" – exactly as the prior seven quarterly payments in the table provided, and just as in all of those prior quarters ST paid for, and Crown provided, hosting services for that quarter.  Accordingly, given that ST's interpretation of the Agreement is the only reasonable one, Crown's breach of contract claim must be dismissed.

Likewise, given the parties' written Agreement fully and completely sets forth the basis upon which Crown was to receive compensation for its services, as a matter of New York law it cannot state a claim based on the quasi-contractual relief of unjust enrichment, as even its own cases make clear.

For these reasons, and as explained more fully below, ST respectfully submits that its Motion to Dismiss should be granted and Crown's Amended Complaint dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I.      PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED

In its Opposition, Plaintiff does not set forth, or even propose, any competing interpretation of its own for the Agreement at issue.  Instead, Plaintiff primarily raises two counterarguments to the interpretation ST sets forth in its moving brief.  Both counterarguments should be rejected.

### A.      The Agreement provides for recurring payments by ST conditioned on Crown's delivery of services, and, contrary to Crown's argument, nowhere does ST agree "to pay $4,380,000 to Crown"

First, Plaintiff argues that ST "agreed to pay Crown $4,380,000," therefore ST owes Crown a final payment such that ST's total payments under the Agreement equal $4,380,000. *See* Opp. at 1 ("Defendant agreed to pay $4,380,000 to Crown in installments over ten calendar quarters"), at 3 ("In return for these services, Defendant agreed to pay $4,380,000 to Crown in installments over a period of ten quarters."), at 3-4 ("the quarterly payments were not mere hosting fees for the following quarter, as Defendant contends; rather, they were partial payments for the totality of Crown's services").

Nowhere does the Agreement provide for a right to $4,380,000 payment without providing all of the services that were required under the Agreement.  And indeed, for this proposition Crown cites nothing, (*e.g.,* Opp. at 1), or its own pleadings, (*id.* at 3).  Instead, the Agreement provides for quarterly payments with the "Condition[]" that they are "[r]ecurring service fee[s]."  Ex. C § 2.  Plaintiff inexplicably aggregates all of the fees it would have received had it fully performed under the Agreement to reach its $4,380,000 figure.  Moreover, the Agreement provides for the ten payments (that total $4,338,000) to Crown in the same sense as it provides for ten quarters of hosting services to ST.  If Plaintiff fully performed under the Agreement, including the ten quarters of hosting, then over the course of the Agreement it would

have accumulated payments that add up to *a total of* $4,338,000.  But here, Crown does not

dispute that it failed to allege (because it could not) that it provided the full ten quarters of

hosting services, as required by the Agreement.  Therefore Crown is entitled only to the two

installment payments and the seven quarters of "[r]ecurring service fee[s]" it already received

from ST but nothing more.[2]

### B.   The SOW's "Initial Term" provision is no obstacle to ST's interpretation of the Agreement

Second, Plaintiff argues that the Amendment cannot oblige Crown to provide services in

Q3 2014 because the Amendment did not extend the SOW's "Initial Term" and, further, that to

interpret the Amendment to do so "contradicts the plain text of the Agreement."  Opp. at 1; *see*

*id.* at 11.[3]

The "plain text" Plaintiff refers to states as follows:

---

[2] Plaintiff strenuously asserts that this Court should not consider the fact that Plaintiff invoiced ST up front in advance for services to be provided for the upcoming quarter, or wrote to ST threatening that "payment is due on or before July 1st to avoid stopping services."  Opp. at 6 n.2.  *See, e.g.,* ST Br. at 8 ("For each recurring service fee, every invoice stated that it was '[p]ayable per Section 2 provisions of [the] Amendment,' and that the $438,000 fee represented an 'ST.com Outsourcing Fee' for the upcoming quarter. . . . The last undisputed invoice was dated February 26, 2014 and stated that it was 'ST.com Outsourcing Fee – Quarter 2, 2014 covering the period from April 1, 2014 – June 30, 2014.'") (quoting Ex. D), at 9-10 (quoting Ex. F).  As explained, these exhibits are properly before this Court on this Motion, because Plaintiff in its Amended Complaint expressly alleges that it submitted these invoices to ST and exchange the two letters, so they are part and parcel of that pleading, and clearly consist of information relied on by Plaintiff, *see, e.g.,* Am. Compl. ¶¶ 19-24, 26-27; Opp. at 5-6.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 46-47 (2d Cir. 1991); ST Br. at 3 n.2.  Crown makes no attempt to distinguish the controlling cases cited by ST that these documents are properly before the Court.  The cases cited by Crown all involved use of extrinsic materials that, unlike this case, were not referenced in the complaint.  *See, e.g., Chambers v. Time Warner, Inc.,* 282 F.3d 147, 154 (2d Cir. 2002) (concerning industry Codes where "[t]he [a]mended [c]omplaint does not refer to the Codes, plaintiffs apparently did not rely on them in drafting it, and none of the Codes submitted to the court were signed by the [defendants]").

[3] Plaintiff devotes nearly its entire brief to this argument.  *See* Opp. at 1 ("Defendant's argument suffers from one glaring defect: nowhere does the Amendment state that it extended the term of the services."), at 5 ("The Amendment did not purport to alter the Initial Term."), at 9 ("The fundamental flaw in Defendant's argument that the Amendment extended the Initial Term is that the Amendment nowhere states that it extended the Initial Term."), ("The Amendment is clear about what it did and did not modify . . . the Initial Term remained the same."), at 9-10 ("the SOW contains a specific provision setting the Initial Term, which was not addressed in the Amendment"), at 11 ("Common sense dictates that the parties would not have altered the Initial Term, which was a fundamental provision of the Agreement, without explicitly setting out that change in the Amendment."), ("None of the cases Defendant has cited provides support for reading additional language into the Amendment to extend the Initial Term.").

Initial Term:
After its signature by both Parties, this shall come into force retroactively as of July 1st 2011 and shall remain into force during a 36-month ("Initial Term") and may only be terminated pursuant to the Cancellation Policy below.

Ex. B at 29.  The argument fails for several reasons:

*First*, Plaintiff's focus on the Initial Term is misplaced.  Nothing about the Initial Term language quoted above is inconsistent with the parties agreeing to further performance and payment after June 30, 2014.  While the provision clearly imposes restrictions on "Cancellation" *before* June 30, 2014, it does nothing to restrict the parties' ability to set forth additional performance after that date.  To accept Plaintiff's invitation to create conflict that does not exist is contrary to the canon that contractual interpretation should "reasonably harmonize[]" the provisions of the contract "and avoid[] [] inconsistenc[ies]." *James v. Jamie Towers Hous. Co.*, 294 A.D.2d 268, 269 (1st Dep't 2002), *aff'd*, 99 N.Y.2d 639 (2003).

*Second*, Plaintiff's view that the Amendment cannot validly provide for obligations after the "Initial Term" ends undercuts its entire theory of recovery in this action.  Despite repeatedly conceding that the Initial Term ends "June 30, 2014," (Opp. at 1, 3; Am. Compl. ¶¶ 12, 13), Plaintiff simultaneously seeks to recover a purported payment "due July 1, 2014," (Opp. at 5, 6; Am. Compl. ¶ 22).  Plaintiff's argument that Crown owes no duties to ST in Q3 2014 on the grounds that the original SOW does not permit amendments to the Initial Term, (*see* Opp. at 4 ("The SOW nowhere mentions possible alteration of the Initial Term.")), and that the terms of the Amendment are insufficiently explicit (*see, e.g.*, Opp. at 9 ("the Amendment nowhere states that it extended the Initial Term")), bars Plaintiff's own action, which seeks to recover upon obligations Plaintiff alleges ST owed to Crown in Q3 2014.  Therefore, while Plaintiff's view is

plainly mistaken, if the Court were to accept it the proper result would be outright dismissal of the Amended Complaint.

*Third*, "add[ing] words" or a "leap of logic" is not required to find an extension of Crown's service obligation to Q3 2014.  Opp. at 1, 14.  Just a plain reading of the contract.  The Amendment expressly extended the period of the hosting services by creating a new "Event" for "Calendar Q3/14" and "Condition[ing]" the hosting services for that quarter on the payment of a $438,000 "[r]ecurring service fee."  Ex. C at § 2.  This is the exact same arrangement as the preceding seven quarters.  And to the extent the SOW's "Initial Term" provision is inconsistent—it is not *see* p.5, *supra*—the Amendment squarely provides that Section 2's amended table trumps the original SOW.  Specifically, the Amendment provides:

> Terms and conditions set out in this Amendment *are deemed to amend and replace relevant terms in the Agreement, where applicable*. All other terms and conditions of the SOW shall remain unmodified and in full force and effect. This Amendment shall be deemed to constitute a part of the SOW and the Agreement.

Ex. C § 4 (emphasis added).

In light of the fact that the Section 2 amended table expressly extended Crown's "[r]ecurring service" obligations under the SOW through Q3 2014, the "Initial Term" clause is a "relevant term" and was accordingly amended and replaced so as to accommodate that extension. *Id.* at §§ 2, 4.  Remarkably, rather than fully quote this provision in its opposition brief, Crown disingenuously employs ellipses in its quest to avoid key parts of Section 4 that destroy any semblance of its argument.  *See* Opp. at 5 & 9 ("'All other terms and conditions . . . [remained] unmodified and in full force and effect.'"); *Instinet Inc. v. Ariel (UK) Ltd.*, No. 08-CV-7141 (JFK), 2010 WL 779324, at *6 (S.D.N.Y. Mar. 5, 2010) (rejecting party's interpretation and concluding there is no ambiguity where "[i]n its brief, [the party] obfuscated the definition by

omitting material clauses in favor of an ellipsis").  Again, the goal of the Court is to harmonize the Amendment with the original SOW, and the interpretation offered by ST unambiguously does so.  *See 350 E. 30th Parking, Ltd. v. Bd. of Managers of 350 Condo.*, 280 A.D.2d 284, 287 (1st Dep't 2001) ("Where a lease is subsequently modified, the lease and its modifications must be taken together and construed as one contract in order to carry out the parties' intent.").

> ### C.      The interpretations of the Agreement compelled by adopting Plaintiff's theory of the case are absurd, commercially unreasonable, and inconsistent with the parties' plain intent

The two commonalities throughout the SOW and Amendment are that:  (1) "Pricing for the Crown-hosted solution is a flat, monthly fee," Ex. B at 27, and (2) payments of fees by ST are tied to delivery of services by Crown, *see, e.g.*, *id.* ("Pricing for the Crown-hosted solution is *$146,000 per month when Crown begins delivering the Hosted Service* . . . .") (emphasis added).

Plaintiff's interpretation is commercially unreasonable and inconsistent with the plain intent of the parties.  Plaintiff, in effect, asks this Court to conclude that the parties—who, when signing the Amendment knew Crown could only begin services in Q2 2012, thus allowing only nine quarters before the Initial Term of the original SOW expired—reached a strange, lopsided bargain whereby they would *extend* ST's payment obligations into Q3 2014 (so that Crown would still receive ten quarters of payments) but *excuse* Crown's service obligations, and bifurcate it from fees Crown received, such that ST only received nine quarters of service.[4] Plaintiff offers no explanation for why the parties, who linked payment to performance just several months earlier when they signed the SOW, would bifurcate the two in a way that is

---

[4] Plaintiff actually takes inconsistent views on how the this Court would be obliged to read the Amendment to purportedly alter the payment schedule if it adopted Plaintiff's theory of the case.  *Compare* Opp. at 5 (it "shifted the due date for Defendant's installment payments back by one quarter") *with* Opp. at 10 (the Amendment "merely [] shift[s] the final installment payment to the end of the Initial Term").  Either way, the parties would not have needed the lengthy schedule set forth the Amendment § 2 to complete such a simple operation.

purely to ST's detriment.[5]  It is plainly the more sensible interpretation to conclude that the

parties extended both payment and performance for a tenth quarter.  *See Acme Supply Co. v. City*

*of New York*, 39 A.D.3d 331, 332 (1st Dep't 2007) (dismissing complaint where "plaintiff

proffers interpretations of individual provisions of the procedure that are inconsistent with its

plain intent and violative of basic principles of contractual construction"); *see also Greenwich*

*Capital Fin. Prods., Inc. v. Negrin*, 74 A.D.3d 413, 415 (1st Dep't 2010) ("[A] contract should

not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the

reasonable expectations of the parties.") (citation and internal quotation marks omitted).

Moreover, it is well settled that the fact that the parties offer differing interpretations of a

contract does not constitute ambiguity.  *See Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*,

88 N.Y.2d 347, 352 (1996) ("provisions in a contract are not ambiguous merely because the

parties interpret them differently").

   Even if the Amendment did not expressly speak to the performance schedule in the SOW,

or if the Court accepted Plaintiff's meritless assertion that it somehow "superseded []

introductory language" in the SOW providing that payments are "quarterly, up-front," (Opp. at

10), the clear and unequivocal reading the Agreement is still Defendant's.[6]  That is, as described

above, (*see* pp.3-4, *supra*), the Section 2 amended table, by its own terms, plainly "[c]onditions"

ST's payment to Crown on Crown performing "[r]ecurring service."  Therefore, even if the

Amendment replaced only the original SOW "*payment schedule*," (*see* Opp. at 10 ("The

Amendment expressly replaced the payment schedule in those Tables and defined the payments

---

[5] Plaintiff's view concedes – as it must – that the SOW tables govern both payment and service, (*see* Opp. at 3 ("The SOW details a schedule for the provision of services within the Initial Term."), ("[e]ach quarterly payment represented compensation for multiple services that Crown provided," including "for the maintenance and hosting of the website")), but then inexplicably divorces the two and claims that the Amendment only alters the payment schedule, but not service (*see, e.g.*, *id.* at 4).

[6] Section 2 of the Amendment plainly states that the specific tables were being replaced, and in no way indicates that the words that preceded them were meant to be changed.  *See* Ex. C § 2.  In fact, they were not.

differently than the SOW.")), this does not matter, because terms conditioning ST's quarterly payment on Crown's recurring service still appear in the amended table in Section 2 of the Amendment.  Accordingly, Crown's failure to deliver service in Q3 2014 is fatal to its claim, even under its contrived view about which portions of the original SOW are replaced by the Amendment.[7]

## II.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED

Plaintiff wishes to use its Opposition brief to salvage its unjust enrichment claim by now recasting this second claim for relief as a pleading "in the alternative."  Opp. at 14.  The Amended Complaint, however, simply does not plead it in the alternative.  *See* Am. Compl. ¶¶ 35-38.  Indeed the sole basis Plaintiff alleges for recovery is the written agreements at issue; there is no *bona fide* dispute about whether a contract exists or whether it covers the payment Crown seeks.  *See* Am. Compl. ¶ 25 ("Pursuant to the SoW, STMicro was obligated to make the Final Payment on July 1, 2014."); Opp. at 7, 9 (insisting that Plaintiff is entitled to recovery because, *inter alia*, the "existence of a contract" is undisputed).  As a matter of law, Plaintiff's unjust enrichment claim therefore cannot survive.  *See MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, No. 14-CV-2197 VM, 2014 WL 4447298, at *6 (S.D.N.Y. Aug. 27, 2014) (Marrero, J.) ("A plaintiff can plead unjust enrichment as an alternative claim to breach of contract, but only if there is 'a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue.'") (citation omitted) (emphasis added).

---

[7] Plaintiff argues in a footnote that "Defendant violated Local Rule 7.1(a)(3) by failing to submit a copy of the Amended Complaint with its motion" and that "[t]his omission alone is a further ground to deny the motion."  Opp. at 7 n.3.  Defendant believes that it has complied with the Local Rule by submitting all relevant information necessary for the Court's decision on Defendant's Motion.  This Court has been apprised that Defendant's Motion is plainly against Plaintiff's Amended Complaint, (Dkt. #4).  *See* ST Br. at 1; ST's Notice of Motion, at 1, Dkt. #9.  To the degree the Amended Complaint needs to be provided to the Court in this Motion, Plaintiff has appended the Amended Complaint to its Declaration in Opposition to this Motion, (*see* Dkt. #13 & 13-1), and thus there can be no issue that all relevant parts of the record are now before the Court on this Motion, rendering this argument moot.

## **CONCLUSION**

For all of the foregoing reasons, and those set forth in ST's moving memorandum, the

Court should dismiss the Amended Complaint with prejudice.


Dated:  New York, New York             Respectfully submitted,
           December 18, 2014

                                       SIDLEY AUSTIN LLP

                                       By:   */s/ Benjamin F. Burry*
                                             John J. Kuster
                                             Benjamin F. Burry

                                             787 Seventh Avenue
                                             New York, New York 10019
                                             Tel:  (212) 839-5300
                                             Fax:  (212) 839-5599
                                             jkuster@sidley.com
                                             bburry@sidley.com

                                       *Attorneys for Defendant*
                                       *STMicroelectronics International N.V.*